[Civ. No. 5063. Third Appellate District.—May 23, 1934.]

MAX B. ARNOLD, Respondent, v. RAY HUMPHREYS, Appellant.

G. L. Aynesworth for Appellant.

Barcroft & Barcroft for Respondent.

THOMPSON, J.—The defendant has appealed from a judgment which was rendered against him for one-half of the commissions or profit derived from the sale of real prop-

erty pursuant to an oral agreement which he had with the plaintiff by the terms of which a joint adventure was created with relation thereto.

The complaint alleges that the plaintiff and the defendant were duly licensed real estate brokers in Madera, and that they entered into an agreement "whereby they engaged to use their joint efforts *to consummate* the purchase and sale of certain real property", and "in event they were successful *in effecting* such purchase and sale, that the profits arising from the sale so effected by the efforts of the parties hereto would be divided between them share and share alike". The record discloses no demurrer to this complaint. The answer denies generally the foregoing allegations of the complaint regarding the joint adventure, and affirmatively alleges that the defendant "made a sale of real property and made a profit thereon within the last year, but that plaintiff had no rights in relation to the same".

The appellant contends that the findings and the evidence fail to support the judgment chiefly because there is a fatal variance between the allegations of the complaint and the proof which was adduced in support thereof. It is asserted the complaint alleges only a joint enterprise between the parties to buy and sell real estate as principals and that the evidence merely tends to prove that they were acting as agents in attempting to procure the sale of land in behalf of the owners thereof.

The plaintiff and defendant are real estate brokers who have maintained separate realty firms at Madera for several years. They had frequently co-operated in other realty transactions. In October, 1931, the defendant contacted a prospective customer by the name of J. J. Johnson. Humphreys told the plaintiff he had a prospective purchaser of a large stock ranch whose name was Johnson and asked the plaintiff if he had any suitable ranch listed. Arnold obtained all the necessary information regarding the Forrest ranch in Merced County, which was on the market for sale. A friend of the plaintiff by the name of Buchenau was also joint owner with Simonson and two other parties of another 1900-acre ranch in the same county, called the High ranch. The plaintiff first recommended the sale of the Forrest ranch. Together both agents frequently communicated with the prospective purchaser, J. J. Johnson. The plaintiff per-

sonally showed him the property and sought to consummate the sale in the latter part of October, 1931. Johnson finally refused to purchase the Forrest ranch for the reason that the soil contained too much sand and gravel. In a joint effort to sell this ranch the plaintiff and defendant often conferred in the office of Arnold. At one of these conferences, Buchenau, the friend of plaintiff, was present, and it was then agreed that if the sale of the Forrest ranch failed, they would attempt to sell the High ranch to Mr. Johnson. After Johnson expressed his dissatisfaction with the Forrest ranch, the defendant procured his check for $100, which he gave to the plaintiff to offer to Buchenau for the purchase of the High ranch at a proposed selling price of $43,200. This offer was rejected by Buchenau. On October 21, 1931, in the presence of Buchenau, in the office of the plaintiff, both agents agreed to attempt to procure a better offer from their customer, Johnson. Arnold then requested Buchenau to execute a written authorization for them to sell the High ranch at a price of $45,000 or $50,000, agreeing to pay them five per cent commission in the event of a sale. Buchenau wrote the document in their presence, addressing it to the defendant, and handed it to the plaintiff, who immediately turned it over to the defendant. The check for $100 was returned to the defendant by the plaintiff with the statement, ''I returned the check to Mr. Humphreys with the suggestion . . . that we could not get by with this offer, but that it would be possible to get by with a reasonable offer, somewhere between 43 and 50 thousand.'' In behalf of their customer Johnson, Mr. Buchenau was later offered $45,000 for the High ranch, which he promptly rejected. Apparently the defendant had been secretly negotiating with Mr. Simonson, one of the joint owners of the High ranch, to induce him to persuade his associates to sell the ranch for $46,000. It is undisputed that he agreed to pay Simonson $500 for that strategic service. He was actually paid $250 on that account. The plaintiff was not informed of this conspiracy. Neither had the defendant said anything to him about terminating their former agreement to jointly attempt to consummate the sale of the High ranch for an even division of the commission to be earned thereby. Having procured the consent of the owners of the High ranch to sell it for $46,000 net,

the defendant, on January 6, 1932, took an option for the purchase of the ranch at that price from the owners in his own name. The following day he executed escrow instruments of conveyance of the ranch to John Johnson, the son of their former customer, J. J. Johnson, in consideration of the agreed price of $50,000. The initial payment of $3,000 was made in the form of a check which was signed by their customer J. J. Johnson. The sale was consummated. The defendant admitted at the trial that he received a net profit from the sale in excess of $3,000.

There can be no doubt that the plaintiff and defendant entered into an oral agreement to participate in a joint enterprise for the purpose of selling this High ranch and dividing the commission or net profits therefrom equally between them. The frequent conferences and joint negotiations between them regarding the matter furnishes convincing evidence of the existence of the agreement. In addition to corroborating evidence which appears in the deposition of the plaintiff, which was taken by the defendant and filed in the case, Mr. Arnold testified in that regard: "Q. By the way, did you have any agreement concerning a commission on the High deal? A. Yes, sir. Q. And what was it? A. The agreement was, Mr. Humphreys would have to expend $500.00 with a broker . . . and then the rest would be divided equally." The defendant conceded that there was an original agreement between them in that regard. He testified: "Q. And you proceeded to effect a sale of that property, did you not? A. Yes, I sold the property. Q. Mr. Arnold was in that deal with you at the start, was he not? A. At the beginning, yes." There is neither an allegation of the answer nor proof that the defendant ever attempted to terminate that agreement for a joint enterprise, until after the sale was consummated. In fact, it appears that the defendant sought to defeat the plaintiff of his interest in the transaction by secretly conniving with one of the owners of the ranch and taking an option to purchase it in his own name, passing the title to the son of their former customer. The court was justified in assuming this conduct on the part of the defendant amounted to a mere subterfuge and a violation of his trust, and that the joint enterprise agreement with the plaintiff was in full force

at the time of the sale, entitling him to one-half of the commissions or net profits from the sale.

Upon the foregoing evidence the court adopted findings in favor of the plaintiff upon all of the allegations of the complaint, except as to the amount of the net profit alleged to have been derived, which the court reduced to the sum of $3,000. Judgment was accordingly rendered in favor of the plaintiff for the sum of $1500. From this judgment the defendant has appealed.

The evidence is adequate to support the findings to the effect that the High ranch was sold by the joint efforts of the plaintiff and defendant, pursuant to the terms of their oral agreement to engage in the joint enterprise of selling the ranch and to divide equally between them the commission or net profit derived from the sale; that the defendant received in excess of $3,000 net profit from the sale, one-half of which belongs to the plaintiff. The judgment of $1500 which was rendered against the defendant is therefore just and valid.

There is no variance between the allegations of the complaint and the proof which was adduced at the trial. The appellant contends that the complaint alleges only an agreement between the parties to jointly engage in the enterprise of buying and selling real estate, and that upon the contrary the proof shows that they merely acted as real estate agents in attempting to sell property belonging to another person. The appellant's position seems inconsistent, for the only real defense which he appears to have made at the trial is that he first terminated the joint enterprise with the plaintiff and then bought the ranch in question in his own name and resold it at a profit. In effect, we think both of these assertions are incorrect. The complaint does not allege that these parties were to jointly engage in buying and selling real property. It alleges that they were to engage in an enterprise whereby they agreed to "use their joint efforts *to consummate* the purchase and sale of certain real property". The complaint further recites that "in event they were successful *in effecting*" such sale, they would divide the profits equally between them. The defendant could not have been misled by this language. It is quite evident he was not misled. The complaint clearly charges a joint enterprise between two real estate agents to co-

operate in *effecting* or procuring the sale of the High ranch, with the agreement to divide the commission or profit derived from such sale equally. It is immaterial whether they were to engage in that joint enterprise to sell real estate as principals or as agents. It further appears quite conclusively that the defendant did not purchase the High ranch himself in good faith. The procuring of the option in the defendant's name, and conveying the title to the son of their real customer, was apparently a mere subterfuge to deceive the plaintiff. Evidently the defendant was really acting as an agent in consummating that sale. There is therefore no variance between the allegations of the complaint and the evidence adduced in support thereof.

■ We are persuaded the transaction which is involved in this case constitutes a joint adventure between the parties based upon an oral agreement to co-operate in the sale of real property and to divide equally the net profit derived therefrom. (14 Cal. Jur. 760, sec. 2; *Koyer* v. *Willmon*, 150 Cal. 785 [90 Pac. 135, 137]; *Sly* v. *Abbott*, 89 Cal. App. 209 [264 Pac. 507]; *Ford & McNamara, Inc.*, v. *Wilson*, 119 Cal. App. 475 [6 Pac. (2d) 996].) A joint adventure which is created for a specific purpose partakes of the nature of a limited partnership between the parties thereto. It is governed by the same principles which apply to a partnership, including a fiduciary relationship existing between the parties requiring each member to exercise the highest degree of good faith towards the others. The fact that the parties to this action maintained separate real estate firms did not prevent them from entering into a valid joint enterprise with respect to a particular tract of property. (*Koyer* v. *Willmon, supra.*) In the case last cited it is said:

"The fact that he [the plaintiff] had a general partner, with whom he was engaged in the real estate business, did not prevent him from entering into a particular partnership with Willmon relating to a particular lot, or lots, of land, to buy and sell the same for their joint benefit, or to engage in any other joint enterprise concerning such lands."

■ In the absence of evidence of an agreement to the contrary, the members of a joint adventure will participate equally in the profits and losses of the enterprise. (14 Cal. Jur. 761, sec. 2; *Butler* v. *Union Trust Co.*, 178 Cal. 195

[172 Pac. 601]; *Irer* v. *Gawn*, 99 Cal. App. 17 [277 Pac. 1053]; *Ford & McNamara, Inc.*, v. *Wilson, supra.*)

It is true that the relationship of joint adventurers may be terminated by mutual consent or otherwise. (33 C. J., p. 848, sec. 21; *Irer* v. *Gawn, supra.*) In the present case the defendant admitted that the plaintiff was originally associated with him in the joint enterprise of selling the High ranch and dividing with him the profit derived therefrom. There is no evidence to indicate that he attempted to terminate that relationship. He accepted the benefits of the plaintiff's services and then surreptitiously sought to deprive him of the profits thereof.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 19, 1934.