[Civ. No. 5769. Third Appellate District.—February 9, 1937.]

CLAUDE R. BLODGETT, as Trustee in Bankruptcy, etc., Respondent, v. MERRITT ANNEX OIL COMPANY (a Corporation), Appellant.

Pease & Dolley for Appellant.

Frederick W. Welsh and Alfred Siemon for Respondent.

PLUMMER, J.—This is an action to determine the rights of the respective parties, if any, under a certain oil drilling contract dated February 14, 1930.

On the date just mentioned the appellant entered into an agreement with Carl S. Hemple and James E. Brown, having for its purpose the drilling of certain oil wells. The rights and privileges of Hemple and Brown under the agreement were subsequently assigned to the Federal Drilling Company, a corporation. Under the contract the appellant allowed the respondent Drilling Company to take possession of a certain rotary oil drilling outfit. Subsequently, the Federal Drilling Company took possession of the drilling outfit and began operations upon what is termed in the contract "Well No. 1". This well was never finished. The Federal Drilling Company became bankrupt, ceased its drilling operations beyond the time allowed in the contract, permitting the appellant to repossess itself of the drilling equipment. The appellant brought a reclamation proceeding against the referee in bankruptcy and obtained possession of the property mentioned above. Thereafter, the trustee in bankruptcy instituted this proceeding to determine the rights of appellant, if any, to the royalty mentioned in the contract.

The contract provided that upon cessation of work for a certain length of time, the appellant might repossess itself of the drilling outfit and terminate the contract. The portion of the contract in dispute between the parties is worded as follows (omitting names of parties):

"Annexed hereto and made part hereof is an inventory of a rotary drilling outfit and other oil well tools and equipment

(hereinafter called the drilling equipment) owned by Merritt Annex and title to which is warranted by Merritt Annex to be free and clear of encumbrances, now located on property known as the Lindner Lease in the Huntington Beach Field, Orange County, California. Second parties have inspected the drilling equipment and will accept delivery 'as is', without warranty or representation by Merritt Annex as to condition or equality. Within ten days after date hereof second parties shall dismantle and remove the drilling equipment to the location for 'Well No. 1' hereinafter mentioned, all at expense of second parties. At the location of, and for use in connection with 'Well No. 1', and not elsewhere, second parties shall install and keep the drilling equipment in good order and repair, at expense of second parties, and shall use the same for the drilling of said 'Well No. 1'. Second parties agree that the drilling of 'Well No. 1' will be commenced and prosecuted diligently and in good faith. In event of abandonment of 'Well No. 1' prior to time it is completed and on production, or cessation of work thereon for thirty (30) days prior to time it is completed and on production, this contract, at option of Merritt Annex, shall terminate and second parties shall surrender possession of the drilling equipment and Merritt Annex may remove the same, and this contract thereupon shall terminate.''

Following this portion of the contract it is provided that the second parties therein assign to Merritt Annex, and agree that Merritt Annex shall be paid, and shall own that which shall be equivalent to a one-eighth per cent royalty as to production from and after date hereof, from all wells drilled on the entire section.

The contract further provided that at all times after the first of such subsequent wells is commenced, Merritt Annex will own, and shall receive and be paid at least one-half of said 8 per cent royalty, subject to deduction of one-half of said respective monthly deduction, and at other times may ultimately own, receive, and be paid the full amount of said royalty and subject to monthly deductions, as aforesaid.

As stated, ''Well No. 1'' was never completed, and the appellant, under the contract, repossessed itself of the drilling outfit. The question presented before the trial court and urged upon appeal is whether, after proceeding under the

portion of the contract which we have set out herein and repossessing itself of the drilling outfit, the appellant is still entitled to receive 8 per cent royalty subject to the deductions mentioned in the contract. In other words, is the language found in the contract susceptible of being interpreted so that even if no drilling operations are carried on hereafter by the Federal Drilling Company or the trustee in this action, the appellant for all time is entitled to, and has become the owner of 8 per cent of the oil that may be produced from the leased premises on which "Well No. 1" was commenced.

On the part of the respondent it is contended that the portion of the contract which we have set forth herein is plain and unambiguous and means exactly what it says, to wit: That upon the repossession of the drilling outfit by the appellant "this contract shall thereupon terminate".

On the part of the appellant it is contended that this language refers only to the drilling outfit, and does not bar the right of the appellant thereunder to take and receive the 8 per cent royalty. The pleadings do not tender any issue seeking to reform the contract or have it read so as to express any other intention than as set forth herein.

Upon the trial of the action the appellant apparently sought to introduce testimony showing the intent of the parties at the time the contract was executed, and for that purpose placed a witness on the stand and asked the following question: "Q. On or about the 14th day of February, 1930, did you have any negotiations with Carl S. Hemple and James E. Brown?" This question was objected to and the court sustained the objection. The transcript does not show any offer on the part of the appellant as to what was intended to be proven by the witness in the event the question just set forth was answered affirmatively.

While we know from the briefs that the appellant sought to prove that the parties intended that only a portion of the contract would be terminated, there is nothing in the transcript upon which we can base such a conclusion. Under the principle as set forth in 2 California Jurisprudence, page 275, nothing is presented to this court upon which we can decide that prejudicial error was committed, if it be conceded that the court erred in sustaining the objection offered by the respondent.

■ The rule as to when parol testimony may be introduced to explain the terms of a contract or to show the intention of the parties, is clearly set forth in the case of *Kenney* v. *Los Feliz Investment Co.,* 121 Cal. App. 378 [9 Pac. (2d) 225], as follows: "It is a settled rule that, when the language employed is fairly susceptible of either one of two constructions contended for without doing violence to its usual and ordinary import, an ambiguity arises where extrinsic evidence may be resorted to for the purpose of explaining the intention of the parties, and that for this purpose conversations between, and declarations of the parties during the negotiations at and before the execution of the contract may be shown."

■ Irrespective of whether a proper foundation was laid by an offer to the trial court of what the appellant hoped to establish by the testimony, we do not find anything ambiguous in the language of the contract. The termination of a conditional contract, as stated in the case of *Sanborn* v. *Ballanfonte,* 98 Cal. App. 482 [277 Pac. 152], means to put an end to all of the unperformed portions thereof. If there are any reservations in the contract and provisions that certain portions thereof are to continue in effect, even though the conditional sales part thereof is canceled or abrogated, then a different conclusion follows, but there is nothing of that kind in this contract.

■ Again, section 1643 of the Civil Code provides that a contract must receive such an interpretation as will make it reasonable. (See, also, 6 Cal. Jur., p. 271.) It would not seem reasonable after the action on the part of the appellant to cancel the contract and repossess itself of the drilling property, that for all time to come it should receive 8 per cent royalty in the event that oil is thereafter produced from the premises upon which "Well No. 1" was proposed to be drilled.

A case somewhat similar in principle is that of *Cocores* v. *Assimopoulos,* 127 Cal. App. 360 [15 Pac. (2d) 892], in which it was held that under a conditional sales contract not providing otherwise, the repossession of the property by the vendor ended the contract. It was also provided in that contract that upon the failure to make payments by the vendee, the vendor might at his option terminate the contract and repossess himself of the property, just as in this case.

It appears from the record that the appellant received some compensation for the use of its property, but how much is not stated.

We think the judgment should be affirmed. And it is so ordered.

Pullen, P. J., and Thompson, J., concurred.