[Civ. No. 13057. First Dist., Div. One. July 17, 1946.]

PERRY FRANCIS MARTTER, Respondent, v. R. W. BYERS, Appellant.

John D. Harloe and William P. Golden for Appellant.

Rea, Free, Jacka & Frasse for Respondent.

WARD, J.—The defendant and cross-complainant appeals from a judgment in favor of plaintiff and cross-defendant for $14,716.39 based upon a contract entered into between the parties. The appellant attacks the sufficiency of the evidence to support the findings of fact and conclusions of law.

The issues upon the trial were framed by the complaint which alleged that $17,379.06 was due under a contract between plaintiff and defendant. This contract was set out *in haec verba* in the complaint as follows: ''This agreement between L.L. and R.W. Byers and Perry F. Martter on the Alaska-Canada Military Highway under the direction of the U.S. Public Roads Administration.

''I, R.W. Byers sole owner of L.L. & R.W. Byers agree to give Perry F. Martter a (¼) one quarter interest on all rentals, and fixed fees or any other profits that may accumulate on the above mentioned job for the lump sum of ($9800.00) Ninety eight hundred dollars, receipt of which is hereby acknowledged.

''It is further understood that if this contract is cancelled by both parties within one year from date, I, R.W. Byers will return cash paid to me plus interest of 10%. If this agreement is in effect more than one year from date, all holdings and equipment on the Canada-Alaska project will be divided (¼) one fourth to Perry F. Martter and (¾) three fourths to the firm of L.L. & R.W. Byers.

''In the event of termination of contract after one year from date, I, R.W. Byers agree to pay to Perry F. Martter for his (¼) one fourth interest, the lump sum of $15,000.00 with out interest.

''Due to the efforts, help and financial aid in securing this contract this agreement is to be strictly a bonus agreement, and can not be construed as giving Perry F. Martter an actual interest in the L.L. & R.W. Byers Co.

''This agreement shall inure to the benefit of and be binding upon the respective heirs, executors, administrators, successors and assigns of the parties hereto.'' The contract is signed ''L.L. & R.W. Byers By R.W. Byers,'' the defendant, and by ''Perry F. Martter,'' the plaintiff.

The figure which was prayed for was arrived at from figures in the complaint, to wit—that defendant received $66,566.07 as rentals, fees and profits; that one-fourth of that amount is $16,641.52; that a flat sum of $15,000 was due under the contract in addition to the above sum; that $14,262.46 had been

paid, which left a balance due of the prayed for amount. The defendant denied that he owed any money on the contract and cross-complained for relief from alleged usury in that the consideration, $9,800, given by plaintiff, was in reality a loan and that the return on the money which had already been paid by defendant was in excess of that permitted by the usury laws in the sum of $1,878.68. Plaintiff answered the cross-complaint by denying that the $9,800 transaction was a loan, and denying that the written contract was in any form a note. The cross-defendant then alleged various transactions preceding the execution of the written contract.

The findings follow closely the allegations set forth in the complaint and the answer to the cross-complaint except in some mathematical items. The court found: "That there was paid to the defendant under said contract set forth in Paragraph I of said complaint as rentals, fixed fees, and other profits the net sum of $56,035.40; that under the terms of said contract one-fourth of said sum, or $14,008.85, belonged to plaintiff, and was due and payable to plaintiff upon its receipt by defendant; that plaintiff received $14,262.46, or an overpayment of $253.61;

"That under the terms of said contract there was and is also due and payable to plaintiff the further sum of $15,000.00 less the overpayment referred to in the preceding finding of $253.61, making a net amount of $14,746.39 to which plaintiff is entitled to be paid by defendant according to the terms of said contract between said parties."

There are further findings which are also embodied in the conclusions of law that the contract of August 15, 1942, created a joint venture and was neither a loan nor security for a loan, and that the payments were not usurious and therefore the court concluded that the contract was not "within the provisions of section 22 of article XX of the Constitution of the State of California." The judgment was entered in favor of plaintiff for $14,746.39. The main question on appeal is whether plaintiff was entitled to the $15,000 item above noted.

Assuming that plaintiff was entitled to the $15,000 item, it is not clear how the amount mentioned in the judgment was reached. The court figured that rentals, fixed fees and other profits were of the "net sum of $56,035.40." The final figure was probably reached by accepting the plaintiff's gross receipts figure and deducting therefrom certain expenses of

operation designated in the column "Deductible from Job Receipts," which is contained in an exhibit prepared by defendant which showed his concept of the financial status of the venture. There was a stipulation that several of the amounts shown in that column were not proper deductions from the gross receipts. The defendant asserts, without substantiating his assertion with itemized factual evidence, that the trial court committed error in figuring the judgment on the basis of gross profits. Plaintiff asserts that the judgment was figured on the basis of net profits and this assertion is likewise stated without particularizing the items to substantiate his claim.

It is not the duty of an appellate court to scan exhibits and testimony to ascertain the correctness of the amount of a judgment. This court in *People* v. *Buenaflore,* 40 Cal. App.2d 713, 719, 720 [105 P.2d 621], said: ". . . And it has been held repeatedly that the mere naked assignment of error is quite insufficient to warrant an inquiry into its merits. (*People* v. *McLean,* 135 Cal. 306 [67 P. 770].)"

"As said in effect in *People* v. *McLean, supra,* the burden rests on an appellant to point out clearly and concisely not only the matters claimed to be erroneous, but the reasons why they are so; and upon his failure so to do, it will be deemed that such matters are not of sufficient importance to demand independent investigation." Giving due weight to the court's use of the term "net sum," and the stipulations concerning deductible expenses, this court will assume, in the absence of a particularized claim of error in the amount of the judgment, that the court figured the judgment on the basis of net profits and will not examine the calculation to determine a mathematical error. Therefore, the points that will be considered on this appeal are the appellant's contentions that the court erred in the finding that, in addition to the sum of $14,262.46 already received, plaintiff was entitled to $15,000, less $253.61, overpayment on his share of the net profits, or $14,746.39; the finding that a joint venture existed between Martter and Byers; and the finding that the contract was not usurious.

It is appellant's interpretation of the contract that the provision for the payment of the $15,000 is an alternative provision depending upon a contingency, namely, the termination of the contract between plaintiff and defendant after a period of one year but before the completion of the contract

with the government to build the roadway. Appellant relies on statements concerning the meaning of "terminate" in *Sanborn* v. *Ballanfonte,* 98 Cal.App. 482 [277 P. 152]; *Arnold* v. *Humphreys,* 138 Cal.App. 637 [33 P.2d 67] and *Blodgett* v. *Merritt Annex Oil Co.,* 19 Cal.App.2d 169 [65 P.2d 123]. The last cited case contains a fair example of the rule that the use of the word in a contract should receive such a reasonable interpretation that it will not violate the intention of the parties. (Civ. Code, § 1643.) The word "terminate" may be given a technical meaning to conform to other provisions in a contract, but generally it is used with an ordinary and popular meaning rather than in a technical sense. Webster defines the verb "to terminate": "to put an end to; to make to cease; to end." The noun "termination" is defined as "that which ends, limits, or bounds— outcome; completion; result." To interpret the word in the contract in appellant's way, to the word "termination" must be added "prior to the completion of the project." It would seem that without more the phrase would have to be read "termination for any reason at any time after one year from date" which would include within its terms a completion of the executory portions of the contract and a mutual agreement to release each other from the rights and duties under the contract. Construing the instrument as a whole, without resort to extrinsic facts, the trial court's interpretation is reasonable.

Possibly the change in expression in the previous paragraph: "If this agreement is in effect more than one year from date," to the particular phrase in dispute: "In the event of termination of contract after one year from date" caused some doubt in the trial court's conception of how the phrase was intended to be used. In this case each side must have considered that the contract presented sufficient ambiguity so that extrinsic evidence should be permitted. Evidence on this subject was freely given by plaintiff and defendant. Plaintiff testified on cross-examination, with reference to his "understanding" of the contract: "Q. Then the next provision is that in the event the contract maintains for more than a year and then it is terminated by and between you, you are to receive $15,000.00 plus interest [?] ——that is the other provision? A. That's—so written. Q. What is your understanding about that; was it that in the event the contract terminated after being in effect a year, but before the comple-

tion of the main contract with the Government——— that if this contract between you and Mr. Byers terminated you were to receive $15,000.00 plus interest? A. I understood that to mean if the contract ran over one year so that the first clause couldn't be taken into effect——— that is, if the contract ran for more than one year those were the terms on which the final settlement would be made. Q. Then you would get $15,000.00 without interest——— that's the reading of it? A. That's the reading of it——— or one-quarter of the equipment; isn't that what it states there? . . . Q. Now, there is nothing said about in lieu of anything else there; that is what I am asking you about, Mr. Martter? A. But the one-fourth interest is set forth in the paragraph directly above, sir, and that is what I understood; the one-fourth interest is set forth directly above that in the contract. Q. That clause provides——— if the contract is terminated after it is in force for one year; but the prior clause thereto which provides a payment to you of $9,800.00 plus 10%, provides for a termination before a year? A. That is correct. Q. That $15,000.00 clause, you might call it that,——— could only come into effect in the event you and Byers terminated your contract between you prior to the termination of the contract with the Government; isn't that so? A. I don't understand it that way, sir.'' It is unnecessary to quote defendant's testimony as the court selected plaintiff's version as the correct one. The evidence is substantially conflicting. Upon that theory the finding of the trier of the fact may not be set aside. (*MacDermot* v. *Hayes,* 175 Cal. 95 [170 P. 616]; *Smrekar* v. *Bay & River Nav. Co.,* 69 Cal.App.2d 654 [160 P.2d 85]; *Baylis* v. *Baylis,* 48 Cal.App.2d 674 [120 P.2d 89]; *Nielsen* v. *Frank,* 117 Cal. App. 117 [3 P.2d 607]; *Burgess* v. *Security-First Nat. Bank,* 44 Cal.App.2d 808 [113 P.2d 298]; *Lang* v. *Barry,* 71 Cal. App.2d 121 [161 P.2d 949].) In *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689], the court said: ''The rules of evidence, the weight to be accorded to the evidence, and the province of a reviewing court, are the same in a will contest as in any other civil case. (*Estate of Snowball* (1910), 157 Cal. 301, 305 [107 P. 598]; *Estate of Barr* (1924), 69 Cal. App. 16, 33 [230 P. 181].) The rule as to our province is: 'In reviewing the evidence . . . all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary . . . principle of law, that when a verdict is

attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any *substantial* evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' (Italics added.) (*Crawford* v. *Southern Pacific Co.* (1935), 3 Cal.2d 427, 429 [45 P.2d 183].) The rule quoted is as applicable in reviewing the findings of a judge as it is when considering a jury's verdict.'' Consequently, the trial court's interpretation, inasmuch as it is reasonable and based upon conflicting evidence which was admitted without objection, must be sustained.

The next contention of appellant is that the evidence in the record is insufficient to sustain the finding that a joint venture existed between the parties, which relationship the plaintiff alleged in his answer to the cross-complaint. In addition to the contract of the parties there is evidence that the parties were in the same general line of business. In May, 1942, defendant called at plaintiff's home in Los Angeles and broached the subject of obtaining a contract with the United States Government to construct a portion of the Alaska-Canada highway. Defendant was to secure the contract and supply equipment while plaintiff was to put up $10,000, and go to and remain at the scene of the construction project, except for vacations, etc. The first understanding was that the profits were to be divided equally. On this basis plaintiff resigned his position in Los Angeles and worked for the defendant in Redding until the government contract was arranged. These preliminary matters led to the execution of the written contract. The decrease in percentage to plaintiff was made necessary by the facts that other people became interested in the project and there were added expenses to defendant. Prior to leaving for the White Horse district, where the construction was to take place, plaintiff assisted in the effort to obtain the contract from the government. Plaintiff supervised the actual construction work as an employee and was so paid by the United States Government at a salary of $650 a month. Defendant at various times had a personal representative caring for and supervising defendant's equipment as required by the government contract. When the representative was absent plaintiff pro-

tected defendant's and his own interests. During 1943 defendant sent additional equipment, the rental from which was specifically excluded in writing from the operation of the August, 1942, agreement.

There is nothing inherently wrong with a conclusion that the relationship of the parties by the terms of contract may change slightly as time goes on as demonstrated by the change in the contract concerning the additional equipment forwarded to the project during the year 1943. Isolated statements in decisions or text books sometimes act as an incentive to reach a conclusion if the facts are analogous, but facts seldom are identical and hence such isolated statements are not always binding. Such statements sometimes appear as persuasive but not convincing argument. Each side quotes learned statements of law on "joint adventure" to uphold or oppose the court's finding. It is admitted that the contract resulted in a profit and not a loss. The contract did not provide for the eventuality of a loss as under the terms of the government contract on a fixed fee basis plus rentals it would have been practically impossible to suffer a loss. ▪ In any event if the facts sustain the finding that a joint venture relationship was created, "The omission of a provision for the sharing of losses in a joint adventure is immaterial because the law supplies that provision. In the absence of agreement, losses by the parties are shared in the same proportion as profits are to be divided. (See section 2412, subd. (a), Civil Code: 'The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules: (a) Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities including those to partners are satisfied; and must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits.' " (*Parker* v. *Trefry,* 58 Cal.App.2d 69, 75-76 [136 P.2d 55].)

▪ As previously stated, plaintiff contends that the provisions of the agreement and what was done thereunder demonstrate a joint venture. Defendant's theory—that the transaction was in fact a loan—under the findings must be disregarded if the finding that it was a joint venture may be upheld. "On the whole, however, it must be said that the courts

have not yet laid down any very certain or satisfactory defini-
tion of a joint adventure, nor have they established any very
fixed or certain boundaries thereof, but in most cases, they
have been content to determine merely whether the given or
conceded facts in the particular case constituted the relation-
ship of joint adventurers.'' (30 Am.Jur. 678.) ''A joint
adventure may be defined to be a joint association of persons
in a common enterprise for profit, but falling short of a part-
nership.'' (14 Cal.Jur. 760.) ''This definition is based on
*Keyes* v. *Nims*, 43 Cal.App. 1 [184 P. 695].)'' (Note 8.)
Since the decision of *Keyes* v. *Nims*, a number of statements
have been made in decisions dealing with joint venture. It
appears that the terms of the agreement and the acts of the
parties as restricted to the particular projects engaged in,
primarily determine whether the undertaking is a joint ven-
ture. ▮ Facts showing the joining of funds, property or
labor in a common purpose to attain a result for the benefit
of the parties in which each has a right in some measure to
direct the conduct of the other through a fiduciary relation
that must exist, will justify a finding that a joint venture
exists. This of course presupposes that the parties must like-
wise bear the burden of an injury or loss, if any. (*Freedman*
v. *Industrial Acc. Com.*, 67 Cal.App.2d 629 [154 P.2d 922];
*Larson* v. *Lewis-Simas-Jones Co.*, 29 Cal.App.2d 83 [84 P.2d
296]; *Beck* v. *Cagle*, 46 Cal.App.2d 152 [115 P.2d 613];
*Enos* v. *Picacho Gold Min. Co.*, 56 Cal.App.2d 765 [133 P.2d
664]; *Parker* v. *Trefry, supra.*) ▮ The benefits need not
be of equal value or kind, and the losses may consist of money
to one and loss of time or labor or property to the other.
(*Shoemake* v. *Davis*, 146 Kan. 909 [73 P.2d 1043].)

▮ The facts in the present case show sufficient elements
of a joint adventure to sustain the court's finding. The assets
of the particular project were owned jointly even under
defendant's interpretation. Preliminary expenses were shared
and likewise the profits. There was a community of interest,
a fiduciary relation and a right on the part of each to direct
the conduct of the other in the respective assignments of du-
ties to each. The amount of $9,800 was a contribution in
accordance with the original agreement that plaintiff should
donate $10,000 to the joint project. Plaintiff offered the addi-
tional $200 but defendant stated that an additional contribu-
tion was not necessary.

In this connection it might be noted that the agreement

provided: "Due to the efforts, help and financial aid in securing this contract this agreement is to be strictly a bonus agreement, and cannot be construed as giving Perry F. Martter an actual interest in the L.L. & R.W. Byers Co." The purpose of the provision is demonstrated in that there was to be no misunderstanding on the question that plaintiff had no actual interest in the Byers firm. This provision in the contract indicates that the agreement is to be construed as a bonus agreement in the event that plaintiff claimed an actual interest in the Byers firm; otherwise the $15,000 without interest after a period of one year was to be accepted in lieu of a one-quarter interest in the equipment on the Alaska project. Plaintiff never claimed a one-quarter interest in the Byers firm. The $15,000 was an amount agreed upon as representing one-fourth of "all holdings and equipment on the Canada-Alaska project" under the provisions of the agreement.

Having reached the conclusion that the trial court rejected the defendant's evidence that the transaction was but a loan of money, and that the finding that the transaction created a joint venture is sustained by the evidence, it must be concluded that appellant's position that the contract evidenced only a usurious loan is not well taken. If this transaction was in fact an ordinary loan with usurious interest provided for therein, or a contract wherein there was to be paid a bonus for a loan that would result in usurious payments (*Brown* v. *Cardoza,* 67 Cal.App.2d 187 [153 P.2d 767]), appellant's position would be well founded. The court found that the contract "was not by way of loan" and that "no interest or bonus whatsoever was paid to plaintiff and cross-defendant by plaintiff and cross-defendant." This finding is sustained by the evidence above outlined, and that ends the matter.

The judgment is affirmed.

Peters, P. J., and Schottky, J. pro tem., concurred.

A petition for a rehearing was denied August 16, 1946, and appellant's petition for a hearing by the Supreme Court was denied September 12, 1946. Carter, J., voted for a hearing.