[Civ. No. 17693.   Second Dist., Div. Three.   Feb. 28, 1951.]

LAURA E. FITZGERALD, Respondent, v. WILLIAM G.
PROVINES, Appellant.

Arthur E. Briggs for Appellant.

William Ellis Lady for Respondent.

WOOD (Parker), J.—Action for declaratory relief, to impress a trust on certain real and personal property, and for an accounting. Judgment was in favor of plaintiff, and defendant appeals therefrom.

Appellant contends that the trial court erred in finding that plaintiff and defendant were joint adventurers and, as such, the owners of the real property; and that said finding is not supported by the evidence.

At the time the transaction involved herein took place, John E. Reuter and defendant, William G. Provines, real estate brokers, occupied the same office, shared the expenses, and divided equally the profits they made. On September 20, 1944, a Mr. and Mrs. Duffy listed for sale with said brokers a 12-unit apartment house which was fully furnished. In January, 1945, John E. Reuter had a conversation with plaintiff, whom he had known about 20 years, relative to selling the Duffy property to her. Plaintiff told him that she would purchase the property for $20,000. Thereafter plaintiff signed escrow instructions and entered into an escrow pertaining to the purchase of said property. A few days later, she decided that she should not continue with the transaction, and she told Mr. Reuter she thought she should withdraw from it. Mr. Reuter stated that it was a good deal and that if he had the money he would buy it himself. Plaintiff then offered to lend Mr. Reuter the money, and Mr. Reuter told her to go ahead with the transaction and that he would take it over. He also told plaintiff that he would give her one-third of the profits. Plaintiff completed performance of her escrow agreement by depositing with the escrow holder $7,500, her promissory note for $12,000 and, as security for said note, a first trust deed upon the property. She had previously paid $500 into escrow. At the close of escrow plaintiff received a grant deed, executed by the Duffys, whereby the property was conveyed to her, and defendant and Reuter (without the knowledge of plaintiff) each received $500 as commission for the sale of the property. On January 30, 1945, during the period of the above escrow, plaintiff, defendant and Reuter entered into another escrow

pertaining to the same property. Pursuant to that escrow agreement, plaintiff conveyed the property to Reuter and defendant as tenants in common. Reuter and defendant assumed the first trust deed (securing the indebtedness of $12,000), executed their promissory note, payable to plaintiff on or before April 1, 1946, in the sum of $8,000 (the amount plaintiff had paid in the first escrow) and executed a second trust deed upon the property as security for said note. The deed from the Duffys to plaintiff (dated January 29, 1945) and the deed from plaintiff to defendant and Reuter (dated January 30, 1945) were recorded on February 16, 1945. Reuter and defendant then went into possession of the property, and they operated the apartment house about one and one-half years. During that time they collected the rents, and from said income they paid all expenses, made payments on the first promissory note, and paid interest to plaintiff on the second promissory note. At the end of that period there was a balance of approximately $400 in the bank. In June, 1946, without the knowledge of plaintiff, Reuter sold his interest in the property to defendant for the sum of $1,500. At this time defendant signed a statement, prepared by Reuter, which was in part as follows: ''At the time we bought this property and got a loan from Laura E. Fitzgerald of $8,000.00 on a 2nd Trust Deed, we agreed that at the time of sale that she was to receive ONE-THIRD of the Net Profit of the Sale Profit. I therefore agree at the time of the sale to comply with this agreement (profits to be figured to amount sold over $20,000.00).'' About August, 1948, defendant notified plaintiff that he had the money ready to pay the note she held. Thereafter plaintiff's attorney wrote defendant a letter in which he stated that the bank had informed him that defendant was demanding that plaintiff ''release'' her trust deed, and he stated further that defendant knew plaintiff was entitled to a one-third interest in the property over and above the sum of $20,000, and that defendant should execute a deed or other instrument setting up such interest in her favor. He also stated therein that plaintiff would purchase defendant's two-thirds interest in the property for $6,000, or sell defendant her one-third interest for $3,000. Defendant thereupon filed an action to compel plaintiff to accept payment of the note, and, after summons and complaint had been served on plaintiff in that action, she accepted payment of the amount of the note ($8,000) and interest thereon. About two months later, plaintiff commenced the present action. She alleged, in paragraph VIII of her second amended

complaint, that, in the negotiations for the purchase of the property, plaintiff received the advice of defendant and Reuter and relied and acted thereon; that before her offer to purchase the property was "consummated," plaintiff stated to defendant and Reuter that she was a widow with six minor children, that she had little or no income for their support, was not experienced in the care and operation of an apartment house, and by reason thereof she thought she should not complete the purchase of said property; that thereupon defendant and Reuter orally proposed that she should complete the purchase of the property for the sum of $20,000 and they would arrange to borrow the sum of $12,000 to be "evidenced by the promissory note of plaintiff" and to be secured by a first trust deed on said property, and the balance of $8,000 to be paid by plaintiff; that they proposed, upon plaintiff acquiring title, the property should be owned by defendant, Reuter and plaintiff as joint adventurers; that for the purposes of operating and managing the property, plaintiff should convey the same without consideration to defendant and Reuter, to be held by them in trust for plaintiff, defendant and Reuter, and they would execute and deliver to plaintiff a promissory note for $8,000, "the amount of money she would advance in acquiring said property, to be secured by a second deed of trust thereon"; that they would continue to operate the property for a period of two years, and at the expiration of said two-year period they would liquidate said property by selling the same for the best price obtainable, and with the proceeds therefrom they would pay said $12,000 first trust deed obligation and the $8,000 second trust deed obligation, or any balance that might remain unpaid at that time; that all proceeds from the operation and sale of the property then remaining, after payment of expenses, should be divided three ways, that is, one-third to plaintiff, one-third to defendant and one-third to Reuter.

Mr. Reuter, called as a witness by plaintiff, testified that he had advised plaintiff in various matters over the years, had sold property to her and had business transactions with her right along; during his association with defendant, they "went in fifty-fifty" on the deals they made, and worked on every deal together; he had a conversation with plaintiff relative to her statement that she wanted to withdraw from the transaction; he then went to defendant and related the conversation which he had had with plaintiff, and stated to defendant that they (witness and defendant) were taking the deal over; and *at that time* he stated to defendant that they would give

plaintiff "a third interest in the profits that we make on this property," and defendant said that was "O.K." He also testified that he told plaintiff and defendant that the plaintiff would "have a third interest in the property, and defendant said that is all right"; nothing was mentioned about sharing in the losses—that they didn't need to do that, prices were going up, and "things looked so rosy" that they didn't mention losses at all; he and defendant were not going to put any of their "own money in it"; when he and defendant "went into the deal of buying" the property they "were to put it up for sale right away," and they did put it up for sale; they raised the selling price to $25,000; thereafter they raised the price to $27,500, and to $37,500; he thought the last price was a little high, and because the proposed sale kept dragging along, he asked defendant how much he would give him for the property; defendant said he would give $1,500, and he (witness) accepted that amount; during the time he and defendant operated the apartment house, neither one took a penny out of the income.

Plaintiff testified that she heard the testimony of Mr. Reuter and that she understood the deal to be as he had testified; after she had "signed up to buy the property," she decided it was a little more than she could handle and also take care of her family; she had never received an accounting from either Mr. Reuter or defendant covering the property; she saw Mr. Reuter several times after he and defendant took possession of the property but she did not ask him for an accounting because she had "no reason to"; she had confidence in Mr. Reuter and believed and relied on anything he told her; the last time she was at the property was when she purchased it; the statement prepared by Mr. Reuter and signed by defendant was made without her knowledge, and she had never seen it; it is her "desire to take over" one-half the interest which defendant acquired from Mr. Reuter in the property, and she is willing to pay $750 for it (one-half of the sum paid by defendant).

Defendant testified that Reuter told him that plaintiff wanted them to take the property off her hands; and that he (defendant) was not "very agreeable" at first because they (Reuter and defendant) would lose the commission. He also testified that plaintiff, in his presence, told Reuter that she would lend him the money to buy the property if he would take it off her hands, and Reuter asked defendant if that was all right and defendant said "yes"; about two weeks later,

while he (defendant), Reuter and the plaintiff were talking, Reuter said, "[I]f we sell the property and make a profit, I will tell you what we'll do, we'll give you [plaintiff] one-third of the profits over $20,000"; there was no time limit set in which to sell the property and nothing more was said about it.

The court found that the allegations in paragraph VIII (above referred to) of the second amended complaint were true. The judgment was as follows: That plaintiff and defendant are the owners of said real property, together with the improvements thereon, consisting of an apartment house and furniture therein, "each owning an undivided one-half interest" in said property, "subject to an indebtedness due defendant William G. Provines in the sum of $8,000.00," and also subject to the balance of the indebtedness due on the note which was secured by the first trust deed; that defendant pay to plaintiff the sum of $2,396.77, which is one-half the money defendant has in his possession from the operation of the property up to June 30, 1949; that defendant make an accounting to plaintiff each month after June 30, 1949, during the time defendant is in possession of said property, and pay plaintiff one-half the net proceeds from such operation; that defendant pay plaintiff $250, which is one-half the commission defendant received (as a real estate broker) for making the sale of the property; that plaintiff pay defendant $750 to reimburse him for one-half the amount that defendant paid John E. Reuter (for his interest in the property); that said property shall be sold, and from the proceeds of the sale the balance due on the $12,000 incumbrance shall be paid, and also from those proceeds the $8,000 due defendant shall be paid, and that one-half of any balance then remaining from the sale shall be paid to plaintiff and one-half of such balance shall be paid to defendant; that a receiver be and is appointed to take possession of the property and to sell it as one unit and as a going business.

As above stated, appellant contends that the trial court erred in finding that plaintiff and defendant were joint adventurers and owners of said real property. He argues that there was no evidence that plaintiff undertook the risks of a joint adventurer, and that all the facts and circumstances in the present case negative any suggestion that the plaintiff intended to share in possible losses from the ownership and operation of the apartment house. At the time of entering into the transaction herein there was no discussion relative

to losses, and the evidence shows that the possibility of sustaining a loss was not within the contemplation of the parties at that time. As above shown, Reuter testified that prices were going up and "things looked so rosy" that they didn't mention losses at all. ■ A provision to share losses, however, may be implied in a joint adventure agreement. It was stated in the case of *Martter* v. *Byers*, 75 Cal.App.2d 375, at page 383 [171 P.2d 101] : "[I]f the facts sustain the finding that a joint venture relationship was created 'The omission of a provision for the sharing of losses in a joint adventure is immaterial because the law supplies that provision. In the absence of agreement, losses by the parties are shared in the same proportion as profits are to be divided.'" (See also *Parker* v. *Trefry*, 58 Cal.App.2d 69, 75 [136 P.2d 55] ; *Arnold* v. *Humphreys*, 138 Cal.App. 637, 643 [33 P.2d 67].)

Appellant states further that all the other elements essential to a joint adventure are lacking. His arguments seem to be based on the theory that there was no agreement between the parties except as disclosed by their escrow agreement and by the statement signed by defendant at the time he purchased Reuter's interest in the property (which statement, hereinabove partially set forth, was received in evidence as "Exhibit A"). After plaintiff decided not to purchase the property, she entered into an oral agreement with defendant and Reuter.

■ In determining whether a joint adventure was created, the court was entitled to consider not only the spoken words of the parties but also their acts. (*Replogle* v. *Ray*, 48 Cal. App.2d 291, 296 [119 P.2d 980] ; see also *Milton Kauffman, Inc.* v. *Superior Court*, 94 Cal.App.2d 8, 17 [210 P.2d 88].)

■ As stated above, after entering into the oral agreement, plaintiff deposited $7,500 in escrow, executed her promissory note for $12,000, executed a trust deed upon the property to secure that amount, and accepted a deed to the property. Also, pursuant to said oral agreement, she entered into another escrow wherein she conveyed to Reuter and defendant her title to the property. She accepted their note for the $8,000 which she had paid on the purchase price of the property and, as security therefor, she accepted a trust deed which was subject to a trust deed given to secure the payment of the $12,000 note. The $8,000 note was not paid on the date it became due (April 1, 1946), and the date of payment was not extended. Plaintiff did not try to collect the note, and apparently the matter of the note was not mentioned until about August, 1948, when defendant notified plaintiff that he had

the money ready to pay the note. The property was purchased for the purpose of selling it and obtaining a profit. Exhibit "A" shows that defendant had agreed that plaintiff should share in the net profit of the sale profit. According to Reuter's testimony, the property was owned by the parties jointly and they were to share in the profits equally. Under such circumstances, the court could find that a lender and borrower relationship did not exist. It was said in the case of *Martter* v. *Byers, (supra)*, 75 Cal.App.2d 375, at page 384, that the courts " 'have not yet laid down any very certain or satisfactory definition of a joint adventure, nor have they established any very fixed or certain boundaries thereof, but in most cases, they have been content to determine merely whether the given or conceded facts in the particular case constituted the relationship of joint adventurers.' [Citation.] 'A joint adventure may be defined to be a joint association of persons in a common enterprise for profit, but falling short of a partnership.' . . . It appears that the terms of the agreement and the acts of the parties as restricted to the particular projects engaged in, primarily determine whether the undertaking is a joint venture. Facts showing the joining of funds, property or labor in a common purpose to attain a result for the benefit of the parties in which each has a right in some measure to direct the conduct of the other through a fiduciary relation that must exist, will justify a finding that a joint venture exists." The evidence was sufficient to support the finding that the parties were joint adventurers.

Appellant asserts that the case of *Mulligan* v. *Wilson,* 94 Cal.App.2d 286 [210 P.2d 526], wherein the court held that a joint adventure was not created, is determinative of the present case. He states that paragraph three of the written agreement therein is similar to "Exhibit A" in the present case. That exhibit was not an agreement between the parties herein. It was a statement signed by defendant, at the time he purchased Reuter's interest in the property, to the effect that at the time the parties entered into the transaction they agreed that plaintiff was to receive one-third of the net profit of the sale profit. It was not signed by plaintiff and was not made with her knowledge. In the Mulligan case the agreement between the parties was in writing and plaintiff's interest was stated to be an interest in the profits and income from the property in excess of the gross investment therein. That case is distinguishable from the present case.

■ Appellant contends further that there was no consideration for the promise made to plaintiff that she would share in the profits or have an interest in the property, in that, the promise was made to plaintiff subsequent to her agreement to lend the money and after she had entered into the escrow.. The record does not disclose the date when plaintiff offered to lend the money, or the date when Reuter made said promise. The record does disclose that after plaintiff had entered into the escrow with the Duffys, she offered to lend Reuter the money, and that thereafter Reuter made the promise. The escrow instructions which were signed by plaintiff and the Duffys were dated January 29, 1945. The escrow instructions which were signed by plaintiff, Reuter and defendant were dated January 30, 1945. The deposit of $7,500 into escrow was made by plaintiff on January 31, 1945. Whether the promise that plaintiff would share in the profits and have an interest in the property was made prior to signing the escrow instructions on January 30th was a question for the trial court to determine from the evidence and the inferences reasonably to be drawn therefrom. Reuter testified that at the time he told defendant about his conversation with plaintiff, relative to her desire to withdraw from the transaction, he also told defendant they (defendant and Reuter) were taking the deal over and would give plaintiff "a third interest in the profits that we make on this property." He also testified that he told plaintiff and defendant that plaintiff would have a "third interest in the property." The evidence was sufficient to justify a finding that the promise to plaintiff was made prior to signing the instructions on January 30, 1945, in the escrow with Reuter and defendant.

■ Appellant contends further that the "alleged agreement" for profits, in addition to the interest on the "loan," renders the agreement usurious. In view of the foregoing conclusions, that the transaction was not a loan but a joint adventure,· that contention is not sustainable.

■ Appellant's contention that the agreement is "within" the statute of frauds is not sustainable. "A joint adventure in the purchase and sale of real estate may be formed by parol agreement." (*Sly* v. *Abbott*, 89 Cal.App. 209, 216 [264 P. 507].)

■ Appellant also contends that plaintiff's "levy and execution of judgment upon defendant's property is inequitable." He asserts, as an alleged explanation of that statement, that plaintiff obtained a writ of execution before

the bond staying execution pending appeal was filed. There is no information in the record regarding a levy of execution, and therefore there is no basis for the contention.

Appellant also contends that the action was upon an oral agreement made more than three years prior to the commencement of this action, and therefore it was barred by laches. In the answer of defendant it was alleged that cause of action "arising from rents, issues and profits" is barred by laches. That allegation was found to be untrue. It does not appear from the pleadings or the evidence that there was any unreasonable delay in commencing the action. Appellant asserts that plaintiff "took no interest" in the property and made no inquiries concerning it until just before commencing the action. Each coadventurer occupies a fiduciary relation to the other. (*Elsbach* v. *Mulligan,* 58 Cal. App.2d 354, 368 [136 P.2d 651].) The evidence shows that plaintiff placed a high degree of trust and confidence in Reuter, and that she believed that he was active in operating the apartment house until a few months prior to commencing this action. It does not appear that she had any reason to believe that defendant would repudiate the agreement. Under the circumstances she was under no duty to make inquiries. The finding regarding laches was supported by the evidence.

Appellant also contends that the action is barred by section 338, subdivision 4, of the Code of Civil Procedure. That said subdivision provides that an action based upon fraud or mistake must be commenced within three years after "discovery, by the aggrieved party, of the facts constituting the fraud or mistake." As above indicated, it does not appear that plaintiff had any information, until a few months before she commenced the action, that defendant repudiated the agreement.

Appellant also contends that the action is barred by section 339, subdivision 1, of the Code of Civil Procedure. That subdivision provides that an action upon a contract not founded upon an instrument in writing must be commenced within two years. Under the circumstances here where, as above stated, plaintiff did not have any information regarding defendant's repudiation of the agreement until a few months before commencing the action, said section is not applicable.

Appellant also contends that plaintiff is estopped to claim a joint adventure, by reason of her acceptance of payment of the $8,000 note. He asserts that when plaintiff was

repaid the $8,000, her entire interest in the property was extinguished. Acceptance of that sum by plaintiff did not affect her rights as a joint adventurer. It was the intention of the parties that plaintiff should be repaid the amount she had advanced in order to make the purchase of the property possible. The repayment of the note did not necessarily extinguish her right to an interest in the property as a joint adventurer. Neither defendant nor Reuter advanced any money toward the purchase price of the property. On the contrary they received $1,000 of the purchase money as commission for making the sale. If the property had been sold, plaintiff would have been entitled to the amount of her note from the proceeds of the sale prior to the determination of profits. Defendant, having paid the sum from his personal funds and not from the income from the apartment house, would be entitled, as ordered by the court, to repayment of that amount from the proceeds of the sale when the property is sold.

Appellant contends further that eight of the findings are insufficient in that they are uncertain, indefinite and ambiguous. The findings so referred to by appellant (Nos. 21, 22, 23, 24, 25, 27, 28 and 30) were made by referring to paragraphs of the answer by number, or to defenses by number, and then stating that all the allegations in those paragraphs or defenses were untrue, except those otherwise found to be true or which defendant by his answer admitted to be true. In order to ascertain the findings which the court made by such references, it is necessary to read not only the allegations of those paragraphs of the answer and the defenses so referred to but also to read the allegations of the second amended complaint referred to in the answer. This method of making findings is a poor substitute for clear and direct findings. Under this method, it is difficult to ascertain the findings which were made. Appellant has not set forth in what respects these findings are insufficient but refers to them generally and by number. It appears, however, from a consideration of the findings as to the allegations of the second amended complaint and as to the allegations of the answer that the findings were sufficient as to the material issues presented by the pleadings.

Appellant contends that it was error to award plaintiff one-half of the amount of the broker's commission received by defendant on the sale from the Duffys to plaintiff. The court found that said commission was paid without the

knowledge or consent of plaintiff. As a coadventurer, it was the duty of defendant to disclose such payment to plaintiff. It was proper to require him to account for this secret profit.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied March 28, 1951.