[Civ. No. 3509. Third Appellate District.—April 4, 1929.]

G. N. JACKSON et al., Respondents, v. BIRD W. GOR-HAM, Appellant.

Benjamin W. Shipman and Henry O. Wackerbarth for Appellant.

Eugene Tincher for Respondents.

PLUMMER, J.—Plaintiffs had judgment in an action to quiet title, from which judgment the defendant appeals. The action was instituted by the plaintiffs to quiet their title to lot 26, in block 53, of the city of Long Beach, as that lot is described in a map recorded in book 19, at page 91 et seq., miscellaneous records of the county of Los Angeles. The facts, as gleaned from the record, are as follows:

Upon the premises described there is situate one single house and one double house. For a long time prior to any of the transactions referred to herein, J. W. Harris and Mary Harris, his wife, occupied the single house; that for about two years prior to December, 1921, the plaintiffs had occupied one section of the double house as tenants of J. W. Harris and his wife; that during the month of December, 1921, J. W. Harris and Mary Harris executed and delivered to G. N. Jackson and Della Jackson, a deed of conveyance transferring all of said property to the plaintiffs in this action; that at the time of the delivery of said conveyance, the plaintiffs in this action executed and delivered to J. W.

Harris and Mary Harris, an instrument conveying to said J. W. Harris and Mary Harris a life estate in the premises referred to, and also a mortgage thereon in the sum of $3,000, payable ten years after date without interest; thereafter, and on or about the sixteenth day of January, 1922, an agreement was entered into between the plaintiffs in this action and the said J. W. Harris and Mary Harris, whereby the section of the double house therefore occupied by the plaintiffs was leased by the said J. W. Harris and Mary Harris to the plaintiffs in this action, for and during the term of the lives of the said J. W. Harris and Mary Harris, and for the life of the survivor of them, the lessees yielding and paying to the said J. W. Harris and Mary Harris, or to the survivor of them, the sum of $15 per month as rental for said premises, and also agreeing to care for and attend to said J. W. Harris and Mary Harris, and the survivor of them, during the remainder of their lives, and the life of the survivor, for which services compensation was also to be paid. At the time of the execution of this agreement, and of the instruments herein referred to, the said J. W. Harris and Mary Harris were of the age of eighty years, or thereabouts. It appears from the record that the plaintiffs did look after and care for the said Harrises until the month of February, 1923, when both J. W. Harris and Mary Harris died.

The defendant is an adopted son of Mary Harris, deceased, and if the conveyance of the property referred to, made by the said J. W. Harris and Mary Harris, his wife, to the plaintiffs in this action, were set aside, would succeed to the whole of said property. In addition to his answer to the plaintiff's complaint, the defendant filed a cross-complaint in which he sought to have the conveyance first referred to herein, set aside on the grounds of fraud and incompetency of the said J. W. Harris and Mary Harris, his wife, and also on the further ground that the conveyance made to the plaintiffs was the result of undue influence. The court found the facts contrary to the allegations of the defendant's cross-complaint. The findings are too long to be set out herein, but in substance they are to the effect that while the Harrises were advanced in years, they were not mentally incompetent; that they were not acting under any undue influence of any person whomso-

ever; that the transactions referred to herein were brought about by their own free will and upon their own inauguration. The court also found that the allegations in the cross-complaint that the deed referred to was made without consideration were not true. Finding number eight of the trial court is in these words and figures: ''That the said J. W. Harris and Mary Harris, and each of them, were at all times prior to December 3rd, 1921, and were on the 3rd day of December, 1921, and were subsequent thereto, to the date of their respective deaths, at all times of sound mind and memory capable of transacting any and all business matters pertaining to their estate and affairs and that at no time were they acting under undue influence, duress, fraud or menace from any person, or persons whatsoever.''

Upon this appeal the appellant confines himself to the presentation of the following points as grounds for reversal: First, ''Inadequacy of consideration, and, second, the relations between the parties being of trust and confidence, respondents were charged with the duty, in the lower court, of proving (a) that the transaction was a fair transaction; (b) that the Harrises received independent advice.''

As to the consideration, the appellant argues that the records show the property to be of the value of a trifle more than $7,000. Respondents make no contention whatever as to the value of the property, but content themselves with citations from the testimony and the findings of the court to the effect that the Harrises had independent advice; that the proposition was one of their own originating; that there were no confidential relations, as those words are used in law, existing between the Harrises and the plaintiffs in this action. The question of inadequacy of consideration really appears to be foreclosed in this action for, as stated in 9 California Jurisprudence, 140: ''Mere inadequacy of consideration is never of itself sufficient ground for setting aside a deed, and the amount of consideration, in the absence of any imputation of fraud, is immaterial to the question.'' (Citing a number of authorities.) If there were any imputation of fraud or any testimony whatsoever showing undue influence, or any testimony whatsoever from which the inference of undue influence might be drawn, then the question of inadequacy of consideration might be considered. It stands alone, however, in this case. Our

attention has not been called to a word in the testimony indicating that any undue influence, or any influence whatsoever was exercised by the plaintiffs over the Harrises to induce them to propose and bring about the consummation of the execution of the instruments to which we have referred. The record does show that the plaintiffs had lived upon the premises referred to, as tenants of the Harrises for about two years prior to December, 1921; that during said time the plaintiffs had been very kind and attentive to the Harrises; had looked after their personal wants; but there is no testimony in the record that the plaintiffs in this action had anything to do with the business affairs of the Harrises or ever transacted any business for them whatsoever, or given any advice in relation thereto. It follows as a necessary conclusion that there is nothing upon which to base constructive fraud, by reason of the relationship in this case. ▇▇▇ Friendly relations or even intimacy of relationship presents an entirely different question from what is understood as a confidential relation in law. One may have confidence in another's integrity and honesty of purpose, and likewise believe that he will live up to any of his contracts, without having any confidential relations with such person that would void any agreements or transactions entered into between them, on the theory of constructive fraud or undue influence. We think the record shows that the Harrises did have confidence in the honesty and integrity of the Jacksons, and believed that the Jacksons would comply with any agreements into which they entered, but there is absolutely no testimony showing anything further, or that there were any confidential business relationships, relationships existing between the Jacksons and the Harrises which would constitute a basis for a charge of constructive fraud. There must be something further than mere confidence in another's honesty and integrity to sustain the presumption of constructive fraud. (*In re Estate of Lavinburg*, 161 Cal. 536 [119 Pac. 915]; *In re Estate of Higgins*, 156 Cal. 259 [104 Pac. 8].) As to what does constitute such relationship is well illustrated in the case of *Cox v. Schnerr*, 172 Cal. 371 [156 Pac. 509], where the person charged with fraud had been the confidential business agent, and for a long time transacted business for the one upon whom undue influence was alleged to have been ex-

ercised. What constitutes confidential relationship in law is also well illustrated in the case of *Piercy* v. *Piercy*, 18 Cal. App. 756 [124 Pac. 561], where a son had lived in the same house with his mother, managed her property as her agent, and also held a general power of attorney.

While the appellant raises the question, the record shows that the Harrises had independent advice. While the respondents in this case are now represented by the same attorney who acted for the Harrises, the fact is uncontradicted that he had never so acted until after the decease of both of the Harrises. The attorney who attended to the transactions to which we have referred was the attorney for the Harrises only, and had been their attorney for some time prior to the execution of the instruments to which we have referred. The record likewise shows that the Harrises were not very much interested in the amount of money which the Jacksons would pay either to them or to their estate; they were more intent on having someone near by who would look after them during their advancing years. The record further shows that whatever of the estate there was belonging to the Harrises, outside of the sum of $500 bequeathed to a niece, was all given to the church to which the Harrises belonged.

Outside of the points which we have discussed, it is conceded by the appellant that the findings of the court are sustained by the evidence, or at least that they are supported by conflicting evidence which prevents their being attacked upon appeal. While the transactions disclosed by the record in this case are somewhat unusual, we find nothing which would justify our holding that the findings of the trial court are unsupported.

The judgment of the court must therefore be affirmed, and it is so ordered.

Thompson (R. L.), J., and Finch, P. J., concurred.