[Civ. No. 7833. First Appellate District, Division One.—September 25, 1931.]

MADS NIELSEN, an Incompetent Person, etc., Appellant, v. H. A. FRANK, Respondent.

W. E. Most for Appellant.

H. A. Frank, *in pro. per.*, for Respondent.

THE COURT.—The above action was brought by an incompetent, represented by his guardian, to recover the sum of $3,097.69, alleged to have been received by defendant for the use of plaintiff.

The plaintiff was adjudged to be incompetent on December 6, 1927, and letters of guardianship of his estate issued. The complaint alleged that two amounts were received by defendant, namely, $2,847.69 on June 10, 1926, and $250 on July 7, 1926. Defendant, who is an attorney, denied the receipt of the first amount but admitted the receipt on that date of the sum of $939.72, and also the second amount, and alleged that both were paid by Nielsen and accepted for professional services rendered.

The evidence shows that plaintiff and his wife accumulated about $14,000 in cash and certain real property. Mrs. Nielsen died in May, 1925, and the above amount was then on deposit in her name in two Oakland banks, namely, the Oakland National Bank and the Central National Bank. The real property, which also stood in her name, was of the appraised value of $3,300. Some days before her death she executed a will, in which she claimed all the above to be her separate property, and bequeathed the whole to W. L. Emerson, in trust, to pay the income therefrom to plaintiff during his lifetime, and directed that upon his death her whole estate be divided between Emerson and her

brother. The will was admitted to probate and letters testamentary thereon issued to Emerson. According to the findings in the case at bar the plaintiff, about the month of May, 1926, by written contract employed Clinton Dodge, an attorney, to recover the above property, claiming it to be community property, and agreed to pay a contingent fee of twenty-five per cent for the attorney's services. Dodge filed on behalf of plaintiff two actions, claiming the ownership of the two deposits mentioned, one action being against Emerson, as executor, and the Oakland National Bank, and the other against the executor and the Central National Bank. Issues were joined in both actions but neither was tried, and Dodge died on March 15, 1926. In May, 1926, plaintiff entered into another contract with defendant and Ralph W. Arnot, who was also an attorney, by which he agreed to pay them twenty-five per cent of all they might recover of the above property, they agreeing, however, to satisfy therefrom any claims of the estate of Dodge by reason of his contract with plaintiff. The attorneys last employed filed a contest of the will of Mrs. Nielsen, and after negotiations with the executor and with the knowledge and consent of plaintiff a compromise was effected by the terms of which the sum of $11,276.99 was to be paid by the estate and received by plaintiff in full settlement of his claim to the property. The proposed compromise was reported to the court in the estate proceeding and approved. It was also found that the above amount was received by plaintiff, and that he in turn paid therefrom to the executor of the estate of Dodge $1427.59; to Arnot $480.36, and to defendant Frank $939.72, a total of $2,847.67; and that it was not true that the above total was received by defendant. Further, that on the date of these payments plaintiff was not incompetent or incapable of handling his business affairs or of managing his property; that the $250 sought to be recovered was an agreed attorney's fee paid by plaintiff to defendant pursuant to a contract made July 7, 1926, whereby the latter prosecuted an action for the plaintiff; that the service was rendered before the plaintiff was declared incompetent and at a time when he understood the effect of the contract and the purpose of the employment for which payment was made. Further, that the contract

was fair in its terms and resulted in material advantage to plaintiff.

The court entered judgment for defendant upon its findings, and plaintiff has appealed therefrom, the grounds therefor being that the findings are unsupported, and that the court erred in ruling upon the admissibility of certain evidence.

A physician who treated plaintiff for a period of six days during July, 1926, testified that due to under-nourishment and autointoxication plaintiff was then in a serious physical and mental condition, further stating that the mental condition might have been caused by his physical condition, but that the former following treatment must have improved. The witness refused to testify that plaintiff was of unsound mind during this period, stating that although ''he had a mentality of ten or twelve years apparently he was sound''. In September, 1927, this witness, who was about to testify in another action as to plaintiff's condition, recommended an examination by Dr. Chamberlain. The latter testified that after an examination, using the Stanford-Binet test, and from plaintiff's history, he found him to be mentally deficient, unable unassisted to manage his affairs, and that his mental condition was probably the same in April and June, 1926. The plaintiff was called and examined by the trial judge. He recalled the material facts of the transaction between himself and Dodge and defendant, and expressed himself satisfied with the Dodge contract. The cashier of the Central Savings Bank of Oakland testified that the payments in question were made in his presence by plaintiff, and that the latter appeared to understand the transaction. In addition defendant testified in detail as to his dealings with plaintiff, stating that the latter, while not a bright man, ''knew exactly what he was doing''.

■ A judgment will not be reversed when there is substantial evidence supporting the findings (2 Cal. Jur., Appeal and Error, sec. 543, p. 921), or where different inferences might rationally be drawn therefrom (*MacDermot* v. *Hayes*, 175 Cal. 95 [170 Pac. 616]), even though there might be an honest difference of opinion as to the effect of the evidence. (*Estate of Presho*, 196 Cal. 639 [238 Pac. 944].) The same rules apply to the determination of the question of mental capacity; and the findings of the trial court can

be overthrown only when they totally lack the support of substantial evidence (*Dunphy* v. *Dunphy*, 161 Cal. 380 [Ann. Cas. 1913B, 1230, 38 L. R. A. (N. S.) 818, 119 Pac. 512]).

The credibility of the witnesses and the weight to be given to their testimony are questions for the trial court (Code Civ. Proc., secs. 1847, 2061) ; and although opinions might differ as to the weight and effect to be given the evidence, there is sufficient substantial evidence to support the court's conclusions in the present case. It has been held that mere weak-mindedness, whether natural or produced by old age, sickness or other infirmity, unaccompanied by any other inequitable incidents, if a person has sufficient intelligence to understand the nature of the transaction and is left to his own free will, is not sufficient to defeat a contract or set aside an executed agreement or conveyance (*Hemenway* v. *Abbott*, 8 Cal. App. 450 [97 Pac. 190]).

The court sustained objections to the form of certain questions asked a physician regarding plaintiff's mental condition. While we are of the opinion that the rulings were correct, nevertheless the errors, if any, were not prejudicial as both witnesses testified fully in this respect.

What we have said applies to the other rulings complained of, none of which affect material matters or can reasonably be said to have been prejudicial to plaintiff's case.

The findings were fully supported, and no error has been shown which warrants the conclusion that the result was a miscarriage of justice.

The judgment is affirmed.