[Civ. No. 7534. Third Dist. Apr. 26, 1949.]

CECELIA WILSON, an Incompetent Person, etc., Appellant,
v. WILLIAM H. SAMPSON et al., Respondents.

454

Leo C. Dunnell and Elden C. Friel for Appellant.

O'Hara, Randall, Castagnetto & Kilpatrick and Macklin Fleming for Respondents.

ADAMS, P. J.—Cecelia Wilson, an alleged incompetent person, brought this action through the guardian of her person and estate, seeking judgment against William H. Samp-

son and his son, Raymond E. Sampson, and his son's wife, Shirley E. Sampson.

The amended complaint, which will hereinafter be referred to as the complaint, was in six counts. The first alleged that on April 27, 1946, plaintiff was the owner of Lot 13 in Block 461, in the city of Vallejo, referred to as the Tennessee Street property, and that on said date, and while she was incompetent and William H. Sampson knew it, she deeded said property to him without consideration.

The second count alleged that the Tennessee Street property was conveyed to said William H. Sampson while plaintiff was laboring under the false belief that she was being persecuted, and that said defendant, knowing her state of mind, falsely and fraudulently represented to her that if she would deed the property to him she would not be persecuted, and he would deed it back to her when he finished a garage which he was building on property on Pennsylvania Street in Vallejo; that she relied upon said defendant's representations, reposed trust and confidence in him, and deeded the property to him, but that he refused to reconvey it to her.

The third count alleged that on March 29, 1946, while plaintiff imagined she was being persecuted, and William H. Sampson knew her state of mind, he represented to her that if she would invest $3,482 in property on Pennsylvania Street and take title in his son's name she would no longer be persecuted; that those representations were untrue to said defendant's knowledge, but that, relying upon them, she withdrew $3,482 from her bank account, which money was used as a payment on account of the purchase price of said property, title thereto being taken in the names of Raymond and his wife, both of whom had knowledge of the foregoing facts; that defendant William H. Sampson represented to her that when he had completed the garage on said property he would cause the grantees to deed the property to her, but that they refused to do so.

The fourth count alleged plaintiff to be the owner of all of the real property above described, and she prayed that her title thereto be quieted.

The fifth count alleged that while plaintiff was of unsound mind and laboring under the false belief that she was being persecuted by gangsters and others, William H. Sampson, knowing her state of mind, falsely and fraudulently represented to her that if she would turn her properties over to him he would and could assist her so that she would no longer

be persecuted; that she was at that time the owner of a promissory note and chattel mortgage upon certain furniture she had sold to one Bertha Kenner, which note and mortgage were of the reasonable value of $2,000; that Sampson induced her to assign said note and mortgage to him on representation that he would collect the balance due and pay same to her, and that he would keep gangsters and members of the underworld from persecuting her; and that she did so assign the note and mortgage, but that said defendant then claimed to be the owner thereof, and that he paid her no consideration whatsoever for such assignment.

The sixth count alleged that about March 29, 1946, plaintiff was the owner of certain household furniture of the value of $2,000 which William H. Sampson and Raymond E. Sampson moved to the Pennsylvania Street property on the false and fraudulent representation that they would fix a room for her on said premises in which she could live; that they knew said representations were false, and knew that she delivered the furniture to them in reliance thereon, but they did not fix the room, and used the furniture for themselves, claiming it as their own.

Defendants, joining in one answer, denied the allegations of the complaint with certain exceptions; denied the allegations of incompetency, and of fraudulent representations and lack of consideration.

The issues were tried by the court without a jury, in March, 1947, and resulted in a judgment for defendants. A new trial was denied, and this appeal followed, the first ground for reversal urged being that the trial court admitted hearsay evidence after the case had been submitted, and the second that the evidence does not support the findings.

Dealing with the latter ground first, the trial court found that on April 9, 1946, William H. Sampson paid $4,000 in cash to plaintiff for an undivided one-half interest in the Tennessee Street property, and received a receipt from her, signed V. Wilson; and on the 25th of April he paid to her $2,780 in cash and assumed a deed of trust for her remaining one-half of the property; that on March 18, 1946, defendant Raymond E. Sampson purchased from Ann Coletti the Pennsylvania Street property for $12,500, paid $5,400 thereon on March 18, $600 on March 20, and assumed a deed of trust for the balance; that during the period from March 18 to March 20 he borrowed $3,482 from plaintiff, and paid her back $3,485 in

cash on March 30; that plaintiff was at all times capable of making, executing and delivering deeds, was of sound mind, was fully capable of taking care of herself and her property, and her capacity in this respect was not impaired to such an extent as to render her susceptible to the influence of others in whom she had especial confidence and trust; that at no time did defendants or any of them promise to deed the above described property back to plaintiff, nor did a confidential relationship exist between her and either William H. Sampson or Raymond E. Sampson; that plaintiff is not a person likely to be imposed upon by artful, designing persons; that William H. Sampson did not express love and affection for her nor did she repose especial confidence and trust in him; that William H. Sampson was possessed of more than $7,580; that at no time did defendants make any false or fraudulent representations to plaintiff concerning the above mentioned property nor threaten or use any force on her, and that the consideration paid for the above described parcels of real property was a fair market value.

Regarding the promissory note and chattel mortgage, the court found that William H. Sampson paid plaintiff $800 in cash for same on the 21st day of June, 1946; that said sum was the reasonable value of said note; and that the household furniture formerly located on the Tennessee Street property was sold at the time the real property therein was sold as a part of the consideration; and the conclusion was that plaintiff had no right, title, estate or interest in either of the parcels of property, the furniture, or the note or chattel mortgage.

■ It may be conceded that in the main the evidence in the case is conflicting. But in such state of the record an appellate court must accept the findings of fact of a trial court if there be sufficient evidence to sustain them. (*Outram* v. *Taft Realty Co.*, 207 Cal. 212, 214 [277 P. 480]; *Hicks* v. *Reis*, 21 Cal.2d 654, 659-660 [134 P.2d 788]; *Nielsen* v. *Frank*, 117 Cal.App. 117, 120 [3 P.2d 607]; *Hughes* v. *Grandy*, 78 Cal.App.2d 555, 566 [177 P.2d 939]; *Martter* v. *Byers*, 75 Cal.App.2d 375, 381 [171 P.2d 101]; *Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550].)

The credibility of witnesses and the weight of evidence was for that judge who saw and heard the witnesses and was able to draw his own conclusions from their demeanor and conduct. (*People* v. *Chamberlain*, 7 Cal.2d 257, 260 [60 P.2d 299].)

■ Where a plaintiff pleads fraud the burden is upon him to prove it, and the presumption of law is against it. (*Gundel-*

*finger* v. *Mariposa etc. Min. Co.*, 72 Cal.App.2d 540, 544 [165 P.2d 57] ; *Adkins* v. *Potter*, 211 Cal. 512, 519 [296 P. 285].)

■ And as for competency, presumptions are in favor of it. (*Estate of Gordon*, 142 Cal. 125, 131 [75 P. 672] ; *Estate of Perkins*, 195 Cal. 699, 703 [235 P. 45] ; *People* v. *Chamberlain, supra.*)

■ We cannot say that there is no substantial evidence to sustain the findings. Even the evidence set forth in appellant's brief does not establish a confidential relationship between William H. Sampson and appellant as all it shows is that Sampson roomed at appellant's rooming house on the Tennessee Street property, sometimes helped her with her work, and that they frequently sat together and "talked very friendly." Appellant testified that Sampson made love to her, but even so, friendship, affection, and even intimacy existing between two parties does not constitute a confidential relationship. (*Meyer* v. *Zuber*, 92 Cal.App. 767, 772 [268 P. 954] ; *Jackson* v. *Gorham*, 98 Cal.App. 112, 116 [276 P. 391].) No claim is made in appellant's briefs that a confidential relationship existed between appellant and the other two defendants.

■ As for appellant's mental condition during the time when the foregoing transactions with defendants were had, while there is some evidence from which the conclusion might have been drawn that she was incompetent, the record is not lacking in evidence to the contrary. She had a bank account from which she drew money for which she secured cashier's checks, both before her transactions with defendants, and subsequent to the trial. Attorney Wallace Cox whom she had consulted in February, 1944, when the Kenner note was executed, and on April 8th and 9th, 1946, regarding the sale of a half interest in the Tennessee Street property and who prepared the deed for same, and whom she also consulted on April 26, 1946, regarding the assignment of the Kenner note, testified that she was in the same mental condition at all those times, and competent to transact business. Witness Roy L. Hartsook, who roomed at appellant's house from June, 1943, up to and including 1946, and who saw and talked with her nearly every day, gave a like opinion. Jack Justice and his wife, who leased the Tennessee Street property from Sampson after its transfer to him, both testified that they visited the premises in June, 1946, with appellant and Sampson, three times, that appellant took them over the rooming house,

told Mrs. Justice what her duties would be in caring for the roomers, and both testified that appellant was capable of transacting business "very definitely," and that she appeared "perfectly normal." Bertha Kenner, who first met appellant in 1941, went into the rooming house business with her in 1943, and then bought out appellant's half interest, and who saw her often in 1945 and 1946, testified that appellant was "very shrewd," was a "pretty smart woman," and "sane, very sane."

While appellant in her brief sets forth evidence to the contrary, including that of one doctor, the trial court was not compelled to adopt their conclusions, even those of the doctor. (*Liberty Mutual Ins. Co.* v. *Industrial Acc. Com.,* 33 Cal.2d 89, 94 [199 P.2d 302]; *Berry* v. *Chaplin,* 74 Cal.App.2d 652, 665 [169 P.2d 442]; *People v. Tucker,* 88 Cal.App.2d 333, 339 [198 P.2d 941].) Appellant argues that the opinions of the defendants' witnesses were not admissible because they were not intimate friends. (Code Civ. Proc., § 1870, subd. 10.) But that, too, presented a matter for the determination of the trial court, where no abuse of discretion appears (*Atkins Corporation* v. *Tourny,* 6 Cal.2d 206, 212 [57 P.2d 480]; *Estate of Perkins, supra,* at p. 710; *Hart* v. *Olson,* 68 Cal.App.2d 657, 663 [157 P.2d 385]); and, further, the testimony of these witnesses was received without objection by appellant, so her objection may not be considered for the first time on appeal. (Compare *People* v. *One Ford V8 Coach,* 21 Cal.App.2d 445, 448 [69 P.2d 473], hearing in Supreme Court denied; *Hart* v. *Olson, supra,* p. 663; *Powers* v. *Board of Public Works,* 216 Cal. 546, 552 [15 P.2d 156]; *Berk* v. *Equitable Life Assurance Society,* 7 Cal.2d 544, 546 [61 P.2d 762].)

Appellant next contends that the evidence does not support the finding regarding the financial condition of William H. Sampson. She does not deny that Sampson gave testimony regarding possession of sufficient moneys but asserts that such testimony is "fantastic and incredible." While it may seem so to appellant and might even seem so to us, the credibility of the witness was for the trial court who saw and heard him testify that he brought from Texas in a steel locker $6,500 in cash which his brother-in-law had given him in repayment of a loan which had been evidenced by a note and mortgage, and also other money in an indefinite amount; and it is admitted that, in addition to the cash in the locker, he had $2,817 in a Vallejo bank.

 While appellant denied that she received any money whatsoever from Sampson, his payment to her of $4,000 on April 9, 1946, on account of the purchase of a half interest in the Tennessee Street property was evidenced by a receipt for that amount, signed by appellant; and her attorney testified that he asked her if the money had been taken care of and she replied that it had been settled; Sampson testified that her attorney asked her about the money and she told him she had it right there in the purse. Payment to her of $2,780 in cash for her remaining one-half interest in the property was testified to by Sampson and corroborated by a Mr. Middleton who was with the two in a car on their way to attorney Cox's office, and witnessed the transaction. Sampson also testified to the payment of $800 to appellant for the Bertha Kenner note and chattel mortgage, out of money in his steel locker. Appellant attacks this transaction on the ground, not only that she never received "one cent" from defendant for the note and mortgage, but that $800, the amount Sampson claimed he paid her, was not the reasonable value thereof; that there was a balance of $2,063.72 due on the note. As for the actual payment of $800 as testified to by Sampson, Bertha Kenner testified that she saw Sampson pay appellant that amount in $50 bills in her living room, and saw appellant give him a receipt for it. She also said that she suggested to appellant that she should not sell the note, but appellant said she was leaving town, and was selling her business. And as for the reasonable value of the note, attorney Cox testified that Sampson and appellant consulted him regarding the deal; that the note was then in default, and that appellant stated that the furniture securing it "wasn't worth a great deal"; that he told them that the value of the note depended upon what the furniture would bring, and probably $800 would be a fair value; and that appellant said that she was agreeable. Such testimony furnishes adequate support for the court's findings regarding that transaction.

Other testimony might be recited which tends to support the court's findings; and on this appeal this court is obliged to accept as true such evidence as supports the findings, and to disregard conflicting evidence. Appellant, we think, has failed to give due regard to this limitation upon appellate courts, in arguing on appeal matters only proper for consideration by the trial court.

462

 Coming now to appellant's contention that the trial court committed reversible error by admitting "hearsay evidence" after submission of the cause for decision, this point was argued by appellant on motion for a new trial, but she charged it only as misconduct on the part of defendants' counsel in sending to the court a letter written by Sampson's brother-in-law in Texas regarding the payment to Sampson of $6,500 in payment of the loan, and as an "irregularity" on the part of the judge in receiving and reading it. The record shows that the trial court on several occasions during the trial requested Sampson to produce the note and mortgage which he claimed he had received from his brother-in-law and returned to him; and at the conclusion of the trial, after Sampson had testified that he had sent a letter to his brother-in-law requesting such papers, the judge said: "I want to know something from Mr. Sampson about that mortgage or the documents from Texas. I would want to see them, of course, and he will deliver them to you, Mr. Kilpatrick" (attorney for defendants). He also said that he wanted to look at°the Pennsylvania Street property, and added: "There will be no objection," to which counsel for both parties agreed. Thereafter Mr. Kilpatrick sent to the court a letter signed by the brother-in-law, Sumrow, as follows:

"O'Donnell Tex
3-10-47

"Dear Henderson.

"How are you all getting along? We are just fine. We had a snow last week just about three or four inches I guess. We sure need a rain. The note for $6000.00 that you loaned me in 1942 I can't seem to find it anywhere it must have been destroyed with some of the other old papers. I didn't think about you wanting it, or I would have kept it. After we payed it off I didn't think it was any good or I would have been more careful where I put it.

"How is Dalton liking Vallejo? What is he doing now?

"Lots of love from.

"Lenna and Ervin Sumrow."

Copy of same was sent to counsel for appellant at the same time, but no objection was voiced by him until notice of intention to move for a new trial was filed in November, some eight months later. The letter was not received as evidence, and in view of the fact that Mr. Kilpatrick in sending it to

the court was acting upon a request of the judge to which counsel for appellant obviously made no objection, we cannot hold that there was any misconduct on Mr. Kilpatrick's part in complying, nor any irregularity on the part of the court in receiving it. Furthermore, since said letter did not conform to the court's request, it does not follow that the court considered it at all in arriving at his conclusions, or if he did that he drew therefrom conclusions in favor of defendants.

 Corroboration of Sampson's testimony regarding the repayment of the loan was furnished by Dalton Sumrow, son of Ervin Sumrow, who testified that he was present in Texas when the $6,500 was paid to Sampson, and that he himself counted it out in $100 and $50 bills; and that his "dad" said he was paying off the note he owed Sampson for money he had borrowed in 1942. This witness also testified that he saw the note and mortgage which mortgage covered three tractors and other farm equipment. Even if there could be said to have been error we cannot say that it was necessarily prejudicial. (Compare *Mullanix* v. *Basich*, 67 Cal.App.2d 675, at p. 679 [155 P.2d 130], and *Roy* v. *Salisbury*, 21 Cal.2d 176, at p. 187 [130 P.2d 706].)

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 23, 1949.