234 P.2d 705]

[Civ. No. 18209. Second Dist., Div. One. Aug. 9, 1951.]

CHARLES MEAD, as Executor, etc., Appellant, v. PERRY SMITH et al., Respondents.

Charles T. Rippy for Appellant.

Donald Armstrong for Respondents.

DORAN, J.—The action herein was instituted by appellant executor of the estate of William Joseph Hayman, deceased, to set aside a certain deed to real estate executed by the decedent to the respondents Smith. It is alleged that a "friendly, confidential and/or fiduciary relationship" existed between respondents and decedent; that decedent, aged 81, was mentally and physically feeble, and that the respondents "took advantage of their confidential relationship to gain unlawful benefits at the expense of the decedent."

The trial court found in favor of defendant-respondents and gave judgment accordingly. It was specifically found that from 1941 to the time of decedent's death on November 11, 1949, Mr. and Mrs. Smith had been tenants of the decedent, "occupying an apartment on the rear of the real property . . . ; that decedent occupied an apartment on the front of said real property from some time in 1947 to the time of his death." The court further found that the decedent was not mentally incompetent, and that the deed was executed "voluntarily and with a clear understanding of the material facts"; that while the property conveyed was "reasonably worth more than $8000.00 . . . the consideration for dece-

dent's executing said deed was said $8000.00 and affection that decedent had towards defendants for their kindness and helpfulness to him.''

It is contended in appellant's brief that the evidence does not support the above findings and that the decision in respondents' favor is contrary to law. Under the well established rules of appellate practice, the power of a reviewing court, where sufficiency of evidence is attacked, begins and ends with the inquiry whether there is any substantial evidence in support of the findings and judgment.

In reference to the alleged confidential relationship the record discloses merely an arrangement under which the respondents collected rent on three of Hayman's apartments; that Smith cared for the lawn for which no compensation was paid because of respondents' low rent; that respondents took care of Mr. Hayman during the last illness; that there was some companionship between the parties and various acts of kindness on respondents' part. Respondents were not related to the decedent.

The deed in question was executed by the decedent on the night of November 3, 1949, eight days prior to Mr. Hayman's death. The record discloses that James M. Hall, the attorney who drafted the deed, was called on the telephone about 9 p.m. on that date by the respondent Kathleen Smith who stated that Mr. Hayman wished to see an attorney that night. Upon the attorney's arrival at the home, inquiry was made as to what was involved and Mrs. Smith stated, according to the attorney's testimony, ''that I would have to talk to Mr. Hayman and that he was in the back bedroom. So she took me in the back bedroom.'' Mr. Hayman then stated a desire to transfer the property to respondents, and in response to the attorney's questions set the price at $8,000, payable $100 per month, with 5 per cent interest. The attorney then drew the deed in longhand, together with a promissory note, and the papers were executed.

Attorney Hall testified that both documents were read to Mr. Hayman and that in the attorney's opinion the decedent was competent to execute the transfer. ''I talked with him, oh, maybe for four or five minutes and asked him questions relating to the transfer, and his answers were clear and I felt he comprehended the transaction.'' It was also ''Mr. Hayman's wish that the note be supplemented by a trust deed. I was not in a position to draw that up that evening. And the substance of the conversation was that

formal papers would be drafted up and recorded." These formal documents were executed on the following day.

The notary public, Ruth Woodcock, corroborated the attorney's testimony as to the transaction, and stated that after reading the grant deed to the decedent, "Mr. Hayman sat in bed and read the deed to himself very slowly," and made no objections thereto. The notary "was afraid he was going to drop the pen upon the bed clothes."

In regard to Mr. Hayman's condition at the time of the conveyance, it appears that the decedent was seriously ill, and that, as one doctor expressed it, "it was a terminal case." Oxygen had been used but at the time of the transaction here in question, Mr. Hayman was not wearing an oxygen mask.

Dr. Stetson, who attended Hayman the night following the execution of the deed, testified that the decedent was then competent to understand the nature and consequence of the matters then under consideration, namely whether the patient should be hospitalized. "For a man around 80 years of age, why, even though he did seem short of breath, why, he seemed to be able to answer my questions all right, and the answers he gave were sufficiently to the point and clear that I don't think that he was mentally unbalanced." It may be noted that appellant "does not contend that the decedent was insane, or that he was so ill, physically or mentally, that he was devoid of any understanding," but argues that "decedent did not fully understand the nature and consequences of his act and that he was so ill that he was influenced by the defendants."

It is argued in appellant's brief that "Friendly relations constitute confidential relations in equity"; that in such cases there exists a presumption of undue influence which shifts to the respondents the burden of proving that "the transaction was fair, free from fraud or undue influence and made by a person in full possession of his faculties." However, as pointed out by respondents, the mere fact that friendly relations exist between the parties to a transaction does not necessarily carry with it any such chain of results.

In the instant case the trial court found that defendants did not stand in the relationship of attorney in fact, agent or employee, with respect to the decedent, and the record contains evidence in support of such finding. Friendly relations there certainly were between the parties, but such relations may be said to furnish a reasonable motive for decedent's actions rather than damning the transaction as fraudulent.

None of the cases cited go so far as to support the appellant's position.

The appellant has laid some stress on the fact that the respondents failed to notify Lily Mead, decedent's sister, of Mr. Hayman's illness. The trial court, however, found that "said decedent instructed defendants not to notify said sister," and the record affords evidence to support such findings. The same is true in respect to appellant's complaint that Mr. Hayman was not taken to a hospital, there is evidence that "decedent requested his attending physician not to take him to a hospital and that said attending physician acquiesced in said decedent's request."

Appellant's argument that "Where confidential relations are shown, decedent must have independent advice," is answered by the trial court's finding, supported by substantial evidence, that confidential or fiduciary relations, in the legal sense of the term, did not here exist. And, as said in *Wilbur* v. *Wilbur*, 197 Cal. 1, 15-16 [239 P. 332], involving a deed from parent to child, where "The evidence . . . shows and the court found that the deed was made freely, voluntarily, and with a full understanding of all the facts and effect of the transfer, . . . it was not necessary to show that the grantor acted upon independent advice." Moreover, as noted in respondents' brief, "Hayman did have the advice of an impartial attorney, namely James M. Hall, who drew the instruments in question after consultation with Hayman and the instruments were drawn according to the instructions of Hayman."

The same may be said in reference to appellant's point that "Inadequacy of consideration (is) sufficient to set aside deed." No confidential relationship was found to exist, and the trial court found from credible evidence that while the property was reasonably worth more than $8,000, the real consideration for the deed was "$8,000.00 and affection that decedent had towards defendants for their kindness and helpfulness to him." A witness produced by appellants, it is true, estimated the value at $18,000. This witness did not take into consideration the fact that the property rented for $84 per month. The assessed value of the property was but $3,800. The trial court's findings on this and other issues, on which conflicting evidence was presented, cannot be made the basis for reversal.

Many of the general principles quoted by appellant are undoubtedly correct and in a proper case would doubtless be

6

decisive. However, fraud, undue influence and the like, are matters which necessarily depend upon the peculiar circumstances of a particular case rather than upon bare and academic rules. In the present litigation the trial court, who was best able to judge of the weight and credibility of the evidence presented, came to the conclusion that no confidential relation existed, that no fraud or undue influence was practiced, and that the deed in question was decedent's voluntary act. Under the evidence as reflected in the record the findings cannot be deemed unsupported.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.