[Civ. No. 20066.   Second Dist., Div. Two.   Dec. 14, 1954.]

JOHN WINSTON McDONALD et al., Appellants, v. BUE-FORD JONES et al., Respondents.

A. V. Falcone for Appellants.

Thomas G. Neusom for Respondents.

MOORE, P. J.—Plaintiffs appeal from the judgment which determines that they have no title to or interest in Lot 67 of Granada Tract. The court found that on December 21, 1951, respondents Jones became the owners of such lot; that appellants have no title or right thereto and concluded that Bueford and Floreda Jones, cross-complainants, are owners in fee simple, and entitled to the possession of Lot 67 subject to the lien of a trust deed in favor of the Broadway Federal Savings and Loan Association and that such owners are entitled to judgment quieting their title to the lot against appellants.

It appears that prior to February 24, 1950, appellant McDonald as owner of Lot 67 had borrowed $3,000 from Robert and Gertrude Newman and conveyed the lot by a second trust deed to the Liberty Escrow Company to secure their promissory note in the sum of $3,000.* On February 24, 1950, appellants made a new loan from the Newmans and delivered a new note for $3,000 and a new second trust deed conveying Lot 67 to secure the debt. The latter instrument was executed also in favor of Liberty Escrow Company, trustee for the benefit of the Newmans. It was thereafter assigned to the Joneses. By reason of default in the payments required by the note, the trustee declared default, its election to sell, recordation of the notice and thereafter sold the property at public sale and Bueford and Floreda

---

*Such trust deed was junior to another by appellant McDonald in favor of the Broadway Federal Savings and Loan Association as security for a loan of $9,700 on February 17, 1950. Inasmuch as this note for $9,700 and its trust deed securing it are not involved in this controversy and remain unimpaired, further mention thereof will not be necessary.

Jones bid it in. Appellants' alleged grievance arises out of that sale.

As grounds for reversal, appellants assert: (1) a proper determination was impossible because of "considerable confusion"; (2) exclusion of evidence of confidential relations; (3) misapplication of the law of conspiracy; (4) the court's prejudicial criticisms of appellants' counsel; (5) erroneous rulings on the admissibility of evidence.

No such confusion appears to have occurred as would have led or as did lead the court into error. Counsel who appeared for appellants at the trial[†] was not prompt or orderly in presenting his evidence and erroneously offered incompetent or irrelevant proof. The court patiently advised the counsel to improve his own knowledge of the case and explained the difficulties encountered. Claim is now advanced that the court found appellants were not in default on their second note. Such contention is without support. By their own admission there was due a total of $2,448.40 on such note and trust deed and $1,849.77 due on their first trust deed, a total of $4,298.17. The record of the trial discloses no confusion except that of appellants' trial attorney.

In their second amended complaint appellants allege that defendants entered into a wrongful conspiracy to defraud appellants of their title and interest in Lot 67 and that pursuant to such conspiracy Newman assigned the trust deed dated February 24, 1950, to Bueford and Floreda Jones "without plaintiffs' consent," then defendants "conspired to defraud plaintiffs, and orally stated to plaintiffs that if they would persuade Eva Gordon, as holder of the $10,000 trust deed," to assign it to Bueford Jones as security, and that defendants would hold same as additional security and that if plaintiffs would pay $50 as incidental costs, defendants would make additional advances from time to time to prevent the first trust deed's foreclosure and would grant plaintiffs a year to refinance the property and repay all sums due defendants.

Pursuant to such pleading, appellants attempted to establish their confidential relationship with defendants, especially with Mr. Newman. They now complain that the court excluded their offers of proof of such relations. ▮ The court correctly ruled that evidence of such relationship was limited to the immediate transaction; that other transactions

---

†Such counsel is not appellants' attorney on appeal.

were irrelevant; that friendliness and social relations were not proof of confidential relations. Appellants were, indeed, nothing more than debtors first of Newman, then by virtue of the latter's assignment, of Jones. In the absence of proof of the exercise of undue influence, mere friendship is not a confidential relationship. To sustain the presumption of constructive fraud, more is required than mere confidence in another's integrity. (*Hausfelder* v. *Security-First Nat. Bank,* 77 Cal.App.2d 478, 482 [176 P.2d 84]; *Mead* v. *Smith,* 106 Cal.App.2d 1, 5 [234 P.2d 705]; *Jackson* v. *Gorham,* 98 Cal. App. 112, 116 [276 P. 391].) In no instance cited by appellants does it appear that the court misunderstood either the law of confidential relations or of conspiracy. ▮ Nothing in the record shows any fraudulent act of respondents. The money was loaned by Newman to appellants on their application. Newman assigned the notes to Jones who thought maybe they should be paid. Appellants did not pay them according to their terms. There is no reason why Newman should have notified appellants of his assignment to Jones. That he did not do so is not fraud. That Newman, as a broker, served Jones; that Jones declared appellants in default on their notes; that he declared a default and caused a sale and purchased the property—these are innocent acts, done every day many times. They do not prove a fraud or a conspiracy. No showing was made that defendants or any of them combined to accomplish by concerted action a criminal purpose, or a lawful purpose by a criminal means. (See *Wells* v. *Lloyd,* 6 Cal.2d 70, 72 [56 P.2d 517]; *Rose* v. *Ames,* 53 Cal.App.2d 583, 588 [128 P.2d 65]; *Lynch* v. *Rheinschild,* 86 Cal.App.2d 672, 676 [195 P.2d 448].)

Appellants complain of rulings on the admission of writings and testimony, viz.:

▮ 1. The exclusion of a third deed of trust. It was *res inter alios acta.*

2. Permitting McDonald to testify that he had given a deed to his sister, Eva Gordon, who at McDonald's request, had signed several documents. Neither those rulings nor any others disclose a prejudicial error. The issues were rather simple. The affairs between other parties were not relevant. Only the written documents proving the debts and the trust deeds securing them were material, pertinent or competent as to the cross-complaint. The rulings on the issues of fraud and conspiracy raised by the second amended complaint were all correct.

Now with reference to the assignments of miscellaneous rulings:

(1) Appellants' offer in evidence of an assignment by Eva Gordon to Bueford Jones was properly rejected. That instrument was not related to the trust deed under which the property was sold. The fact that the pleading referred to it did not make it relevant. Eva's assignment was not alleged as a conspiratorial transaction.

(2) McDonald's "answer as to his $50 payments he made to defendants" was that they were "to be used as payments to Mr. Newman concerning the foreclosure" and was stricken as immaterial and speculative.

(3) Appellants' attempt to prove that in the spring of 1952 they took steps to refinance the second trust deed was abortive. The court required them to show first, "what went on in 1950 and 1951 . . . prove your case in an orderly fashion." No later offer was made. Their attempt to prove they had received a memorandum of loan commitments or the amount of money required to pay off the encumbrances were not material.

(4) The exclusion of the affidavit of Gladys Williams as hearsay was a proper ruling. It was not shown to be a wrongful act or related to the sale. The record is not entirely clean so far as concerns appellant McDonald. He had recorded the trust deed for $10,000 in favor of Eva Gordon without consideration and later conveyed legal title to Gladys Williams.

(5) The question to McDonald, to wit, "Did you trust Bueford Jones and Robert Newman?" was properly excluded on the ground that appellants had not established "a basis for confidential relationship." The allegation "that plaintiffs trusted defendants" and relied on their promises, was not sufficient to warrant the evidence that McDonald trusted Jones and Newman. No conspiracy was proved.

(6) Appellants' attempt to prove McDonald's relationship with defendants failed because no bases for their counsel's questions had been established.

(7) Questions to McDonald regarding Newman's use of Jones' name in property transactions were excluded because of the forms of the questions. After the court had explained the errors in counsel's questions, the latter did not repeat his attempts. There is no justification for the suggestion that McDonald was prevented from questioning Jones "regarding the details."

(8) The assignment that the court inquired how Mc-Donald's license as a broker was terminated was prejudicial fails for the reason that no citation to the transcript is given. Appellants say ''the court inquired.'' Respondents imply that appellants' counsel asked the question.

(9) Appellants say that although the court ''was satisfied from the evidence plaintiffs were not in default it gave them no relief.'' Nothing is found in the record that the court was ever satisfied that appellants were not at fault. Respondents had advanced on the debt secured by the first trust deed $1,849.77 as a protection to their note secured by the second trust deed then delinquent.

(10) Complaint is made that as to the $10,000 note and third trust deed the court was in error and that it did not completely dispose of all matters. What the error was and what issues were not completely disposed of were not particularized and are unknown to this court. The court below found that McDonald was in default on his note and that its security should be foreclosed; that respondents did not commit any fraud against appellants; that no conspiracy was formed to cheat McDonald or Mrs. Williams; that the amount bid at the sale of Lot 67 was due by appellants on their indebtedness; that the sale was regular and legal.

(11) Appellants' allusion to the status of Gladys Williams is a correct statement. It does not assert error. The court in response to counsel's argument said: ''I haven't found any testimony to show she [Gladys Williams] had any interest whatsoever in the property or that she was in any wise harmed.'' No mention of her name appears in the finding except that she claims an interest in and to Lot 67 adverse to respondents but that it is without right; she has no estate or interest in Lot 67 or in any part thereof.

(12) There was no proof of a resulting trust in Lot 67 in favor of appellants.

(13) No substantial grounds for a new trial were presented. Of course such motions are ''important'' but the duty of a court to grant one is determined by well defined legal concepts which must be satisfied before they are granted. A new trial is not allowable merely because of the disappointment of the defeated party.

Finally, the complaint that the trial court ''repeatedly interrupted plaintiffs' case often with erroneous rulings, caustically criticized plaintiffs' counsel'' resulting ''in plaintiffs' prejudice'' is not borne out by the transcript. The court

was painstaking and patient. No ruling has been found to have prejudiced appellants.

Affirmed.

McComb, J., and Fox, J., concurred.

A petition for a rehearing was denied January 3, 1955, and appellants' petition for a hearing by the Supreme Court was denied February 10, 1955.